**CHESSER et ux. v. TROIANO et al.**
No. 685.

Municipal Court of Appeals for the District of Columbia.
Oct. 12, 1948.

Motion to Modify Opinion Denied
Oct. 25, 1948.

Benjamin Simon, of Washington, D. C., for appellants.

Francis W. Hill, Jr., and Augustus P. Crenshaw, III, both of Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This was a suit by real estate brokers for a commission of $850, and for title charges incurred by them in connection with an unconsummated sale of real estate owned by defendants Mr. and Mrs. Chesser, who are appellants here. The trial judge ordered finding and judgment against both defendants and they appeal.

In a letter admittedly signed by both defendants plaintiff Troiano was authorized to sell their property for $17,000 net, all-cash. Plaintiff Troiano testified that with the assistance of plaintiff Calomiris he procured a purchaser who was ready, willing, and able to buy the property for $17,850, all-cash (the extra $850 being for commissions); that when he notified Mr. Chesser of this Chesser instructed him "for income tax reasons" to change the terms of sale from all-cash to $5,850 cash, the balance of $12,000 to be in the form of a first deed of trust running to Mr. and Mrs. Chesser; that plaintiff Troiano obtained from the purchaser a contract on those new terms and submitted it to Mr. Chesser. The contract, which was in evidence, recited that a commission of $850 was to be paid, one-half of it to Calomiris. There is no dispute that Chesser accepted this contract, signing it in triplicate. Nor is there any dispute that Mrs. Chesser did not sign it.

Troiano also testified that at the request of Mr. Chesser he served a notice to quit on a tenant occuying other premises belonging to the Chessers, who proposed to move there from the house they were selling.

The prospective purchaser was produced as a witness and testified that he was at all times ready, willing, and able to pay cash for the property and had agreed to buy it for $17,850 but after being told that the Chessers wanted different terms he signed the contract which was in evidence, embodying such terms.

A representative of a local building association testified that his organization had made a commitment to plaintiff brokers three days before the contract date to place a $12,000 first trust on the property.

A representative of the title company testified that title had at plaintiffs' request

been searched and reported and that on the settlement date defendants did not appear to consummate the deal.

Defendant H. O. Chesser admitted that he and his wife had in writing authorized Troiano to sell their property for $17,000, all-cash. He testified that plaintiffs at no time notified him that they had procured a purchaser on those terms. He admitted that he signed the contract we have described above but said his wife refused to sign it because it did not provide for all cash; and that he, for the same reason, later revoked Troiano's authority. (This attempted revocation was by letter dated a little over a month after the contract was signed.)

■ In discussing the errors assigned we shall treat separately the liability of Mr. Chesser and that of his wife. As to Mr. Chesser it is plain from the evidence we have recited that the trial judge was amply justified (if indeed he was not required) in finding that there had been an employment to sell his property on a cash basis, a later modification of the terms, the production of a contract to meet such modification, an acceptance thereof by Chesser with an express agreement to pay commission, and a subsequent unjustified breach by him.

■ Appellants argue that because plaintiffs did not present a written contract containing the all-cash offer and because defendants denied that they had ever been told of such an offer, plaintiffs should not have been permitted to recover. This argument, as we shall see, would be valid enough as applied to Mrs. Chesser; but it has no validity as to the husband, Mr. Chesser. His ultimate liability grew not from any oral agreement but from the later formal contract which he signed. The conversations and negotiations which preceded it were merely incidental and introductory. His acceptance of the contract was nowise equivocal. It was not conditioned on his wife's acceptance [1] or on any other contingency. Clearly therefore it

was proper to base his liability on the written contract by which he bound himself to complete the deal and pay plaintiffs their commission. His attempted revocation of the broker's authority, coming long after a purchaser had been produced, and his offer accepted, was too late and could not defeat the broker's right to commission.[2]

It is also argued that there was a variance between the pleadings and the proof. This is a wholly mistaken contention. The testimony, as it appears in the statement of proceedings, follows exactly the allegations in the complaint. Defendants could not possibly have been misled thereby. The judgment holding Mr. Chesser liable was in all respects correct.

■ Quite different is the status of the co-defendant Mrs. Chesser. It is true that she signed the original letter by which Troiano was authorized to find a purchaser on an all-cash basis. But according to all the evidence she was never notified that such a purchaser had been found, was never presented with such an offer, and was never given an opportunity to accept or reject it. The only offer ever presented to her was the contract containing the part-cash part-trust offer which she did reject and refuse to sign. Her testimony, as well as her husband's was that he had no authority to act for her in signing that contract or in anything else he did in the transaction except the final revocation of Troiano's authority to sell.

■ Appellees concede, as they must, that the relationship of husband and wife does not per se establish a principal and agent relationship.[3] But they attempt to build a case of agency by inference and implication. They say that because the husband was agent for his wife in other matters he should be considered her agent in this transaction as well. Such is not the law.[4] They say also that because the wife remained silent during certain phases of the transaction, this was a recognition of her husband's agency. But it seems clear

[1] See Schlosberg v. Shannon & Luchs Co., D.C.Mun.App., 53 A.2d 722.

[2] Moore v. Burke, D.C.Mun.App., 45 A. 2d 285.

[3] Rheam v. Martin, 26 App.D.C. 181;

Dillon & Co. v. Sharber, 19 Tenn.App. 488, 90 S.W.2d 533.

[4] Molt v. Baumann, 65 App.Div. 445, 72 N.Y.S. 832; Ham v. Brown Bros., 2 Ga.App. 71, 58 S.E. 316.

to us that she was under no duty to speak. Her position, unlike that of her husband, was that she wanted all-cash, and from this position she never wavered. From this and other circumstances we think the conclusion inescapable that the husband had no authority, real or ostensible, to act as her agent. Consequently we rule that the only liability in this case is that of H. O. Chesser.

Judgment affirmed as to appellant H. O. Chesser.

Judgment reversed as to appellant Anna Louise Chesser with instructions to enter judgment in her favor.