629 A.2d 1317

**Wilton A. BAKER**

v.

**ROY H. HAAS ASSOCIATES, INC.**

**No. 1732, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Sept. 2, 1993.

372

Wilton A. Baker, Bethesda, for appellant.

Miriam W. Daniel, Rockville, for appellee.

Argued before WILNER, C.J., and GARRITY and ALPERT, JJ.

ALPERT, Judge.

This is an appeal from an Order of the Circuit Court for Montgomery County (Paul Weinstein, J., presiding) dated September 1, 1992, granting judgment in favor of Wilton A. Baker, appellant, and against Roy H. Haas Associates, Inc., appellee, in the amount of $250.00. On June 24, 1991, Baker had filed suit against Haas alleging negligence, breach of contract and fraud in connection with a home inspection performed by Haas on property subsequently purchased by Baker.

The crux of Baker's complaint was an allegation that he was forced to reduce the selling price of his house when Baker subsequently sold it (which Haas had inspected less than one

year earlier) by $2,000.00 because of a defective roof. From the Order granting judgment of $250.00 in favor of Baker (representing the home inspection fee paid by Baker to Haas), Baker asks us to resolve the following issue: [1]

> Whether a provision in a standardized home inspection report limits a home inspection corporation's liability for negligence to an amount not to exceed the fee paid by the homeowner for the home inspection?

We answer the above question in the affirmative and, therefore, affirm the decision of the trial court.

### Facts and Proceedings

In June, 1988, Baker entered into a contract with Haas, whereby Haas agreed to perform a home inspection (and prepare a corresponding report) on a house that Baker and his former wife [2] had contracted to purchase as a personal residence, and Baker agreed to pay Haas $250.00. The inspection report prepared by Haas indicated that the roof was in satisfactory condition. The contract contained a limitation of liability provision, which provision is at the center of the parties' dispute herein:

### *Limitations & About Warranties*

> Although care is taken in the performance of inspections [Haas] (and/or its representatives) makes no representations regarding latent or concealed defects which may exist. Property owners should, of course, disclose known defects and deficiencies: not all defects are discoverable even in a thorough inspection of the type we conduct. Warranties may sometimes be obtained from outside insurers, service companies, or even property owners. It is understood and agreed that no warranty or guarantee is expressed or implied by [Haas] (and/or its representatives).

---

1. Both parties agreed that Haas was liable to Baker under the home inspection contract. The dispute was over the amount of damages. Baker sought $2,000 in damages; Haas asserted, on the other hand, that its liability was limited to $250 (the inspection fee).

2. Baker's former wife is not a party to this appeal.

In the unlikely event that any significant problems or anticipated need for repairs not now foreseen should arise, Client shall contact [Haas] before undertaking any repairs; Client recognizes that without the aforesaid notice, no complaint or claim will be considered. In addition, *notwithstanding the provisions of any applicable statute, the sole and exclusive remedy available to the Client is damages in an amount not to exceed the fees actually paid by the Client for services, and all other remedies, statutory or otherwise, are hereby expressly waived by Client.*

(Emphasis added).

In May, 1989 (less than one year after the inspection), Baker entered into negotiations to sell the house. The prospective purchaser had the house inspected and learned that the roof was in substantial need of repair. Moreover, the inspection report revealed that the roof was in substantial need of repair at the time the house was purchased by Baker. Baker was forced to reduce the selling price of the house by $2,000.00 because of the defective roof.

On June 24, 1991, Baker filed a Complaint against Haas in the District Court of Maryland for Montgomery County alleging negligence, breach of contract, and fraud arising out of Haas's inspection of Baker's former house. Baker sought $2,000 in compensatory damages and $10,000 in punitive damages. Haas demanded a trial by jury; accordingly the case was transferred to the Circuit Court for Montgomery County.

On May 29, 1992, pursuant to an Order of the Circuit Court, the parties attended a mediation conference during which they agreed as follows:

The parties agree that the sole issue to be decided concerning the relationship of the parties is the enforceability of the limitation of liability clause in the parties' contract.[3] The parties ask the Court to enter judgment of $250.00 for Plaintiff if it upholds said clause, or judgment of

---

**3.** The parties stipulated as to Haas's liability for failing to discover the defective roof.

$2000.00 for Plaintiff if said clause is not upheld. The parties will submit cross motions for summary judgment.

Both parties filed motions for summary judgment; Haas filed its on June 15, 1992 and Baker filed his on July 31, 1992. Haas's motion was heard and denied on August 6, 1992[4] and the case was then set in for trial.

On August 13, 1992, Haas filed a "Motion to Alter or Amend Judgment and Opposition to Plaintiff's Motion for Summary Judgment." Pursuant to said Motion, Judge Weinstein reversed his earlier ruling (which denied Haas's motion for summary judgment), ordered that the limitation of liability clause in the contract be upheld and granted judgment in favor of Baker in the amount of $250. Baker then filed a timely notice of Appeal on October 1, 1992.

## I.

First, Baker asserts that the limitation of liability provision in the contract at issue does not limit Haas's liability for negligence. Rather than providing any legal or factual basis to support his argument, however, Baker merely states the following in his brief:

> This argument was made to the trial court in appellant-plaintiff's [Baker's] Memorandum in Support of Plaintiff's Motion for Summary Judgment. The argument will not be repeated here.

Pursuant to Md.Rule 8–504(a)(5), "a brief [of a party to an appeal] shall contain ... [an a]rgument in support of the party's position." The effect of noncompliance with this rule is provided in Md.Rule 8–504(c):

> For noncompliance with this Rule, the appellate court may dismiss the appeal or make any other appropriate order with respect to the case[.]

---

4. There is no indication from the record that the court ever addressed Baker's motion for summary judgment.

Notwithstanding our authority to forego consideration of the merits of Baker's appeal, in the interests of justice, we will address Baker's argument.

Baker's argument rests solely on his assertion that, while the home inspection report limited Haas's liability to "latent and concealed defects," the defects on the subject property were "open and obvious." Baker asserts that, at the time he attempted to sell the property, the roofer hired by Baker's purchasers informed him that the roof was defective. That same roofer, a man by the name of Smith, had previously inspected the roof at the direction of the owner from whom Baker had originally purchased the property and informed him of the defect at that time. Mr. Smith informed Baker that, in order to inspect the roof properly, one had to go onto it physically, and not just observe it from inside the house or from the ground. Consequently, Baker concludes that if Haas had physically inspected the roof, it would have discovered that the defects were "patent and obvious." Baker then concludes that the limitation of liability provision was insufficient to shield Haas from its negligent failure to uncover the defective roof.

We disagree.

Maryland law is quite clear on the matter of exculpatory clauses. "In the absence of legislation to the contrary, ... there is ordinarily no public policy which prevents the parties from contracting as they see fit." *Winterstein v. Wilcom,* 16 Md.App. 130, 135, 293 A.2d 821, *cert. denied,* 266 Md. 744 (1972). *See also Schrier v. Beltway Alarm Co.,* 73 Md.App. 281, 533 A.2d 1316 (1987). In *Winterstein,* we quoted Dean Prosser, who emphasized the responsibilities of contracting parties:

> "It is quite possible for the parties expressly to agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and shall not be liable for the consequences of conduct which would otherwise be negligent." Prosser, *Law of Torts,* 3rd Ed. (1964) § 67, p. 456. In other words, the parties may agree that there shall be no

obligation to take precautions and hence no liability for negligence.

16 Md.App. at 135, 293 A.2d 821. In the instant case, the parties contractually agreed to limit damages, resulting from the failure to discover any defects, solely to the amount of fees paid by Baker for the inspection.

Baker also cites *Boucher v. Riner*, 68 Md.App. 539, 514 A.2d 485 (1986), for the proposition that if it could be shown that Haas had committed gross negligence, the limitation of liability provision *sub judice* would not have shielded Haas from liability. In *Boucher*, we stated the following in regard to the appellant's failure to prove gross negligence:

> [T]he conduct alleged here reflects, at worst, poor judgment on the part of Dunker [one of the appellees] that, while perhaps amounting to ordinary negligence, does not rise to the level of gross negligence.

*Id.* at 548, 514 A.2d 485. We also acknowledged, however, that if indeed the appellant *had* proven gross negligence, the limitation of liability provision would not have protected the appellees:

> A waiver of a right to sue, such as the one executed between Boucher and Parachutes [an appellee] is ineffective to shift the risk of a party's own wilful, wanton, reckless, or gross conduct. *Winterstein v. Wilcom*, 16 Md.App. 130, 134–36[, 293 A.2d 821] *cert. denied*, 266 Md. 744 (1972).

*Boucher*, 68 Md.App. at 544, 514 A.2d 485.

Baker correctly states that the limitation of liability clause is not an *absolute* shield to Haas. Haas could conceivably have been held liable for an amount in excess of the home inspection fee if his conduct had amounted to gross negligence. The problem with Baker's argument, however, is that he failed to allege gross negligence in his Complaint and is, therefore, and should be precluded from arguing it on appeal. Md.Rule 8–131(a). In any event, Haas' inadequate inspection is a classic example of ordinary negligence. Its conduct could not be characterized as indicating a wanton or reckless disregard for Baker's rights. *See Coates v. State*, 90 Md.App. 105, 113,

600 A.2d 856 (1992). Nor was there an implication of "malice and evil intention." *See Bannon v. Balto. & Ohio RR Co.*, 24 Md. 108, 124 (1866).

## II.

■ Baker argues, alternatively, that if we hold that the limitation of liability clause indeed limits Haas's damages, we should then "expand our prior holdings and invalidate the exculpatory provision at issue." Appellant's Brief at 8. The "prior holding" that appellant is asking us to expand is, *inter alia*, the one we restated above, articulated in *Winterstein v. Wilcom, supra.* Essentially, appellant asks us "to protect the general public from home inspectors who, with standardized adhesion contracts of exculpation, put the public at the mercy of their negligence." Appellant's Brief at 9.

*Winterstein* concerned the appeal from a judgment in favor of the defendant, William E. Wilcom T/A 75–80 Drag–A–Way (hereinafter, "Wilcom"), who was sued by one Roland C. Winterstein and his wife for personal injuries sustained by Roland while driving in a speed contest.[5] At issue in the case, as in the one at bar, was the validity of a "Request and Release" clause, ostensibly holding Wilcom harmless for any injuries to Winterstein's person and property that may result from his participation is the contest. *Id.* 16 Md.App. at 131–32, 293 A.2d 821. The lower court entered summary judgment in favor of Wilcom, and Winterstein appealed. *Id.* 16 Md.App. at 134, 293 A.2d 821.

In addition to our holding that, in the absence of legislation to the contrary, there is ordinarily no public policy that prevents the parties from contracting as they see fit, *Winterstein, supra*, we also noted the recognized exceptions to the

---

**5.** Winterstein participated in a speed contest held at Drag–A–Way, for which he paid a fee. He suffered extensive injuries when, as a result of solely his own negligence, he lost control of his car and it flipped over. The court postulated that Winterstein participated in the contest either to demonstrate the superiority of his car or to win a prize, but, in any event, his participation was entirely voluntary.

general rule, namely: (1) when one party is at such an obvious disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence, the agreement is void as against public policy, and; (2) it is against public policy to permit exculpatory agreements as to transactions involving the public interest (*e.g.*, public utilities, common carriers, innkeepers, and public warehousemen). *Winterstein,* 16 Md.App. at 135–36, 293 A.2d 821.

In *Winterstein,* we held that (1) the exculpation clause at issue was not the product of unfair bargaining power, and (2) the business operated by Wilcom had none of the characteristics of one connected with the public interest. *Id.* at 138, 293 A.2d 821. Consequently, we held that the release was "merely an agreement between persons relating entirely to their private affairs, [and that, i]n the absence of a legislative declaration, . . . . w[as] not void as against public policy." *Id.* at 139, 293 A.2d 821.

In the case at bar, Baker rests his entire argument on the portion of our opinion in *Winterstein* where we acknowledged and discussed six factors, established in an earlier California Supreme Court case, *Tunkl v. Regents of The University of California,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963). We identified these six factors, collectively, as a rough outline of the type of transaction in which exculpatory provisions would be held invalid. *Winterstein,* 16 Md.App. at 137, 293 A.2d 821.

The aggregation of these six factors is effectively the substance of the second exception to the general rule regarding exculpation clauses stated above—that a business or transaction that encompasses all of these factors is deemed to be one "connected with the public interest," and may therefore constitute a reason to invalidate the limitation on liability clause.

Our review of the record in the instant case leads us to conclude that the limitation of liability clause at issue was valid and enforceable in limiting Haas's liability to the contract fee, for the same reasons supporting our holding in *Winterstein.* Clearly, the home inspection contract was not the product of

unfair bargaining power. Baker presented no evidence that he was unable to solicit the services of an alternative home inspection company if he was dissatisfied with the limitation of liability provision. Moreover, the home inspection services performed by Haas do not fall under the realm of a public duty or concern the public interest.

Consequently, we hold that the limitation of liability clause in the home inspection report, limiting Haas's liability to the cost of the contractual fee, is valid and enforceable.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.