Jennifer CARLETON & John Carleton, Appellants,

v.

Suzanne WINTER, et al., Appellees.

No. 04–CV–768.

District of Columbia Court of Appeals.

Argued Feb. 1, 2006.

Decided June 15, 2006.

Christopher C.S. Manning for appellants.

Kevin I. Kane for appellees. George B. Huckabay, Bethesda, MD, filed a brief for appellees Home Tech Systems, Inc. and Robert Phillips.

Before FARRELL and KRAMER, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

This appeal is from the grant of summary judgment to appellees on various claims—including misrepresentation and negligence—brought against them arising from real estate or home inspection services they performed in connection with the appellants' purchase of a residence in Washington, D.C. We affirm the judgment as to appellee Winter, but vacate and remand for further proceedings with respect to appellees Home Tech Systems, Inc. and Robert Phillips (who conducted a home inspection of the property in question).

## I.

Appellants John and Jennifer Carleton, government employees assigned to Washington, D.C., went house hunting for their child and themselves with a real estate agent, appellee Suzanne Winter. Appellants became interested in a four-story, six-bedroom house in the 2100 block of L Street, Northwest, which was conveniently located to their respective places of employment. Appellants recognized that the house, constructed in the early 1900s and poorly maintained, would require repairs and renovation, but they anticipated doing a good deal of this work themselves.[1] However, both they and their agent noted the sagging condition of the entire back wall of the house and the resultant slanting of this wall's windows, so as to give the windows what they described as a "cock-eyed" appearance.

Appellants, concerned about the condition of the back wall, but also concerned that the house might be bought by others, presented an offer to the house's owners, conditioned upon a favorable report by a professional home inspection company. Appellants requested that their real estate agent, appellee Winter, choose for them a competent home inspector. She advised that there were only three companies in the area that she could recommend, one of them being appellee Home Tech Systems, Inc. (HTSI), and its employee, Robert Phillips. Winter had used Phillips in the past, and she described him as "great" and particularly suited for young people who

---

1. Appellee Winter later recounted that appellant John Carleton told her that "he came from a family involved in construction."

were first-time home buyers, such as the Carletons.

Shortly thereafter, appellant John Carleton and home inspector Phillips went through the house together for almost two hours. Appellant Jennifer Carleton later testified at trial that she received a call from her husband who was then in the house with Phillips. Phillips had explained to John Carleton that old houses "settle" over time, and that this was what had happened to this particular house. After Phillips gave this favorable report, the condition earlier put on appellants' offer to purchase was removed, and they bought the house. Appellants paid HTSI $430 for the home inspection services, pursuant to a printed form agreement which John Carleton and Phillips had signed.

The Carletons commenced certain renovations, intending to create within their four-story dwelling a unit for a tenant. They brought in a contracting company to commence the renovations, but upon arrival, the construction foreman told them they had a "serious defect in the rear wall." Also, an architect hired by appellants examined their house and advised that the wall was going to have to be replaced, and advised appellants to have a structural engineer examine it. Shortly thereafter, the entire back wall of the Carletons' house collapsed. The fallen wall had to be removed through a public alley behind their house, which was a laborious, and thus expensive, process and a new wall put in its place.[2] While this repair work was being carried out, appellants and their child had to live in a nearby apartment. They estimated they expended some $169,000 on repairs to make their house livable.

Appellants brought suit against appellees Phillips and HTSI, and also against appellee Winter and her employer, generally alleging negligence on the part of them all, as well as alleging that appellee Winter had breached the fiduciary duty which she had owed them as their real estate agent.

The trial court, after considerable pretrial discovery, made various rulings, all of them unfavorable to appellants. Thus, the court concluded that appellee Winter's agency relationship with appellants did *not* fall within the ambit of the District of Columbia Consumer Protection Procedures Act (the CPPA), codified at D.C.Code §§ 28–3901 through –3913 (2005), and that she had *not* made fraudulent misrepresentations to them by recommending Phillips. The court also *rejected* appellants' contention that they did not need to present expert testimony to support their claim that Winter had breached her fiduciary duty to them as their agent by recommending Phillips to inspect the house before they purchased it. Finally, after a jury had been assembled and appellant Jennifer Carleton had testified, the court concluded that the expert witness appellants presented to explain to the jury the responsibilities of a real estate agent lacked sufficient expertise, and therefore, could not testify. Accordingly, the court entered judgment as a matter of law in favor of Winter and her employer.

As to appellants' claims against Phillips and his employer, HTSI, the court entered an "Order Granting in Part, and Denying in Part, Defendants' Motion for Summary Judgment." This terse ruling determined that there was a genuine dispute "as to whether the inspection was negligently performed," but then concluded, without explanation, that it was "clear that liability [of appellees HTSI and Phillips] is limited

---

**2.** Since their house fronted on L Street, which is heavily traveled, access to the house for 2 renovations could only come from the alley.

to a refund of the $430.00 inspection fee pursuant to ... [the] signed agreement," and therefore that these appellees "may thus terminate involvement in this case by refunding the inspection fee."[3]

## II.

With respect to the court's rulings granting summary judgment and judgment as a matter of law, we review those determinations *de novo*. See *Columbia Plaza Tenants' Ass'n v. Columbia Plaza Ltd. P'ship*, 869 A.2d 329, 332 (D.C.2005) (summary judgment); *Brown v. Nat'l Acad. of Sciences*, 844 A.2d 1113, 1117–18 (D.C.2004) (judgment as a matter of law).

We first address the trial court's rulings in favor of appellee Winter and her employer. The court concluded, in reliance upon *Howard v. Riggs Nat'l Bank*, 432 A.2d 701 (D.C.1981), that "there is no fraudulent misrepresentation for a recommendation by one professional to a third party to utilize the services of another professional." Here, Winter testified that she had recommended Phillips as the home inspector because she had used him "a few times" previously and he had done a "great job," and also because she liked "the way he explains the workings of the house, especially to young people who have

never owned a house before." As we pointed out in *Howard*, fraudulent misrepresentation requires, *inter alia*, a false representation as well as knowledge of the falsity. *Id.* at 706. There is nothing in the record to show either that these representations by Winter were false or that she knew they were false.[4] Hence, we are not persuaded that the trial court erred in rejecting appellants' claim that Winter made a fraudulent misrepresentation to them. Moreover, we have noted on previous occasions that "a prophecy or prediction of something which it is merely hoped or expected will occur in the future is not actionable upon its nonoccurrence." *Id.* at 706 (quoting *Bennett v. Kiggins*, 377 A.2d 57, 61 (D.C.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978)).[5]

Our decision in *Howard v. Riggs Nat'l Bank* also disposes of appellants' contention that Winter's recommendation of Phillips to appellants violated CPPA § 28–3904(a)—(f).[6] In *Howard*, a bank's employee told a customer of the bank that the customer would have to provide home construction plans to the bank before it could make a construction loan. 432 A.2d at 704. The agent recommended a particular construction company to the custom-

---

**3.** The record reflects that appellee HTSI promptly tendered to appellants a check in the amount of $430.

**4.** Winter acknowledged that she had never asked Phillips for his "resume" or a "synopsis of his qualifications," but this alone could not constitute a "willful omission of a *material* fact." *Id.* (emphasis added).

**5.** Appellants' reliance on *Spargnapani v. Wright*, 110 A.2d 82, 84 (D.C.1954), is misplaced. In that case, we held that, under certain circumstances, a plaintiff can make a case for fraud when the defendant sets forth a "pretense of knowledge when knowledge there is none." *Id.* at 84. However, no such pretense exists here because Winter's recom-

mendation of Phillips was specifically grounded upon *her* knowledge that he *had* done "great" work for *her*.

**6.** This section provides in pertinent part that "[i]t shall be a violation of this chapter ... for any person to: (a) represent that ... services have a source, sponsorship, [or] approval ... that they do not have; (b) represent that the person has ... approval, [or] status ... that the person does not have; ... (d) represent that ... services are of particular standard, [or] quality ... if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; (f) fail to state a material fact if such failure tends to mislead...." D.C.Code § 28–3904.

er, and the company never performed the promised work. *Id.* at 705. This court concluded that the CPPA was intended to regulate the conduct of merchants or goods suppliers, and the bank did not fall into either category. *Id.* at 708–10. We specifically held that the CPPA does not "impose liability as a guarantor upon any private individual (or his employer) who recommends the goods or services of a particular merchant to another." *Id.* at 710. Thus, Winter's recommendation of Phillips because he had done good work for her in the past places neither her nor her employer within the ambit of the CPPA, and therefore the trial court's conclusion that the CPPA did not apply to the facts and circumstances of this case was correct.[7] *Id.* at 706; see also *Banks v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 634 A.2d 433, 437–39 (D.C.1993).

■ Appellants contend finally that appellee Winter, as appellants' real estate agent, is liable for the negligent failure of Phillips to detect the faulty back wall of their home because she breached her fiduciary duty to them by recommending him. Appellants claim that *no* expert testimony was necessary in this case because "it is within the common knowledge of a lay person to know that a realtor violates his/her standard of care when he/she recom-

mends a house inspector without knowing anything about the inspector's credentials or background."[8] However, the record does not support such contention. Rather, it reflects that Winter knew about the past work of Phillips for her, and hence told appellants that he had done a "great" job for her in the past and that he was particularly suited for working with first time home buyers. Moreover, we are not persuaded that a lay person has "common knowledge" to determine the appropriate standard of care for a realtor under the circumstances here. Real estate agents owe manifold duties to persons they represent; whether and to what extent those duties include "vouching" for careful performance by a home inspector they recommend are questions on which only the standards of the profession—as articulated by an expert—can enlighten a jury. *See District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C.1995), and cases cited therein.

■ Alternatively, appellants claim that no expert testimony was necessary at the trial because D.C.Code § 47–2853.192(a)(2)(C)[9] and (a)(4)[10] are "detailed in expressing the realtor's obligations but also flexible enough to apply to a wide range of circumstances." However, it is established that if a statute "merely repeat[s] the common law duty of reason-

---

7. We note that even if Winter did qualify as a "merchant," as the term is defined under CPPA's § 28–3901(a)(3) and interpreted in *Howard*, 432 A.2d at 709, she would not necessarily be liable under § 28–3904. Winter told appellants that Phillips' *past* work for her was "great," and no evidence in the record suggests that it was not "great." Her words also did not rise to the level of an express warranty; even if they did, the instant case does not involve a sale of goods. 3 WILLISTON, SALES § 17 (5th ed.1996).

8. Appellants seize upon a comment by appellee Winter that she had never asked for his resume or inquired of his educational back-

ground. Presumably, her own previous positive experiences with his work obviated the necessity for her to ask about his background.

9. "A licensee engaged by a buyer shall ... promote the interests of the buyer by ... disclosing to the buyer material facts related to the property or concerning the transaction of which the licensee has actual knowledge...." D.C.Code § 47–2853.192(a)(2)(C).

10. "A licensee engaged by a buyer shall ... exercise ordinary care...." D.C.Code § 47–2853.192(a)(4).

able care," it is inappropriate as a substitute for the common law standard. *McNeil Pharm. v. Hawkins,* 686 A.2d 567, 579 (D.C.1996). Only if it sufficiently "set[s] forth 'specific guidelines to govern behavior'" may the court adopt it as the applicable standard. *Id.* (quoting *Joy v. Bell Helicopter Textron, Inc.,* 303 U.S.App. D.C. 1, 10, 999 F.2d 549, 558 (1993)). There were no such specific guidelines here.

Appellants further argue that "Winter *recklessly* recommended a house inspector to examine a very serious structural defect without knowing ... anything about the inspector's credentials and background.... Therefore ... the standard of care for a realtor acting as a fiduciary is *statutorily established* and no expert was needed to provide the standard of care at trial." (Emphases added.) However, the record does not support appellants' argument. While Winter testified that she had not examined Phillips's "credentials and background," she did testify that her recommendation of him was based on her own experience with him, and it is undisputed that she was aware of no negative information about his past work or reputation. Accordingly, we are not persuaded that § 47–2853.192 presented a meaningful standard of care. *Thoma v. Kettler Bros., Inc.,* 632 A.2d 725, 728–29 n. 8 (D.C.1993); *District of Columbia v. Mitchell,* 533 A.2d 629, 639 (D.C.1987); *Lewis v. Washington Metro. Area Transit Auth.,* 463 A.2d 666, 674 (D.C.1983).

Finally, appellants contend that, even if expert testimony was required to establish the proper standard of care for realtors in the selection of home inspectors for their clients, the witness they proffered at trial had the expertise to testify concerning that standard. The record reflects that when trial commenced, appellants' counsel announced that he would call one expert witness, J.D. Grewell, whom he described in his opening statement as "an expert on inspections." Subsequently, there was an objection to his giving testimony because Grewell did not qualify as an expert on the duties of a realtor acting as an agent for her clients. Rather, counsel for appellants asserted that the proffered witness was qualified only to testify concerning the proper procedures for a home inspector to follow in carrying out his responsibility to those who hire him. The trial court concluded that the "standard of care and [Winter's] responsibility to the [appellants] as ... a real estate agent, is beyond the ken of your average lay person walking into this courtroom." The court further concluded that "there is no way [appellants] can go forward without a witness to establish the standard of care" and that this witness lacked the appropriate qualifications to testify as an expert on the duties of a realtor to its client. Accordingly, the court granted judgment as a matter of law in favor of appellees on their claim against Winter and her employer.

We are unable to conclude upon this record that the trial court abused its discretion by excluding the testimony of the expert witness whom appellants proffered. The witness Grewell described himself as a Professional Home Inspector since 1972, and listed himself as an "active member of the American Society of Home Inspectors," having been a Senior Member of that organization since 1979. While Grewell appeared to have impressive experience as to the performance expected of a home inspector, he had no experience as to the ambit of fiduciary duties owed by a real estate agent to her client in the particular area of selecting a home inspector at the request of the client. *See Haidak v. Corso,* 841 A.2d 316, 322 (D.C.2004) (expert witness must have sufficient skill, knowledge, or experience in the *relevant*

*field* so that his testimony will probably aid finder of fact). Accordingly, we are unable to conclude that the trial court erred in granting judgment in favor of appellees Winter and her employer.

## III.

■ We turn now to the trial court's two-fold determination of appellants' action against HTSI and its employee, Phillips. On the one hand, the court determined that there was indeed a genuine issue of material dispute between appellants and appellees over whether Phillips' inspection of appellants' house had been "negligently performed." But on the other hand, the court also concluded that appellees "may ... terminate involvement in this case by refunding the inspection fee" received from appellants, because the form Pre–Inspection Agreement appellant John Carleton executed with HTSI provided that if HTSI was "found liable due to ... negligence ... then the liability ... shall be limited to a sum equal to the amount of the fee paid by the customer for the inspection and report."

The trial court gave no further explanation of its ruling. We presume that the trial court concluded that the exculpatory clause barred the appellants from recovering full damages on their claim. We conclude, however, that the law is not so clear on that issue. While the law in this jurisdiction is not extensive on the issue of enforcing exculpatory clauses, in *Houston v. Security Storage Co.*, 474 A.2d 143, 144 (D.C.1984), addressing an exculpatory clause in the context of a bailment, we wrote: "It is well settled in this jurisdiction that a provision in a bailment contract limiting the bailee's liability will be upheld in the absence of gross negligence, willful act, or fraud." Indeed, an examination of leading authorities in the contract area and of cases in other jurisdictions reveals that courts have not generally enforced exculpatory clauses to the extent that they limited a party's liability for gross negligence, recklessness or intentional torts.

THE RESTATEMENT (SECOND) OF TORTS § 496B, cmt d (1963, 1964), explains: "[G]eneral clauses exempting the defendant from all liability for loss or damage will not be construed to include loss or damage resulting from his intentional, negligent, or reckless misconduct, unless the circumstances clearly indicate that such was the plaintiff's understanding and intention." Similarly, CORBIN ON CONTRACTS § 85.15, 455 (2003), states: "Courts do not enforce agreements to exempt parties from tort liability if the liability results from that party's own gross negligence, recklessness, or intentional conduct." Likewise, WILLISTON ON CONTRACTS § 19.23, vol. 8, 291–97 (4th ed.1998), reads: "An attempted exemption from liability for a future intentional tort or crime or a future willful or grossly negligent act is generally held void...." PROSSER AND KEATON ON TORTS § 68, 483–84 (5th ed.1984), further clarifies: "[O]n the basis either of common experience as to what is intended, or of public policy to discourage aggravated wrongs, such agreements [to limit liability] generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless or gross, or to any conduct which constitutes an intentional tort."

These treatises are based upon the case law from a wide range of jurisdictions, and in turn, many courts have adopted the reasoning of these treatises. *See, e.g., Farina v. Mt. Bachelor, Inc.*, 66 F.3d 233, 235 (9th Cir.1995) ("The clause exculpates [the appellee] from liability for more than ordinary negligence, including gross negligence and wanton or willful misconduct. This attempt to escape liability for more than ordinary negligence renders the re-

lease clause invalid"); *Hanks v. Powder Ridge Rest. Corp.*, 276 Conn. 314, 885 A.2d 734, 747–48 (2005) ("[M]any states uphold exculpatory agreements in the context of simple negligence, but refuse to enforce such agreements in the context of gross negligence. Connecticut does not recognize degrees of negligence and, consequently, does not recognize the tort of gross negligence as a separate basis of liability"). *See also Murphy v. N. Am. River Runners*, 186 W.Va. 310, 412 S.E.2d 504, 510 (1991).

Asserting an absence of authority in this jurisdiction with respect to the enforceability of a limitation of liability clause in a home inspection contract, appellees HTSI and Phillips urge the court to look to Maryland, and specifically cite to *Baker v. Roy H. Haas Assocs.*, 97 Md.App. 371, 629 A.2d 1317 (Md.1993). In that case, the Maryland Court of Appeals upheld a limitation of liability clause in a contract similar to the clause here limiting the home inspection company's liability to a refund of the $250 inspection fee. *See also Maiatico v. Hot Shoppes, Inc.*, 109 U.S.App. D.C. 310, 312, 287 F.2d 349, 351 (1961). What HTSI overlooks, however, is the *Baker* court's conclusion that such a limitation is not effective to limit liability if the conduct of the party whose liability has been contractually limited has been grossly negligent or worse. 629 A.2d at 1321 (citing *Winterstein v. Wilcom*, 16 Md.App. 130, 293 A.2d 821, 824 (Md.1972)). *See also Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 686 A.2d 298, 301 (1996) (recognizing that exculpatory clauses will

not be enforced "when a party to the contract attempts to avoid liability for intentional conduct of harm caused by reckless, wanton, or gross behavior").

The trial court acknowledged in its brief ruling that there was a genuine dispute between the parties as to whether Phillips' inspection had been negligent. Testimony before the trial court established that two other witnesses, a contractor and an architect who had some expertise on house building, looked at the back wall of the Carletons' house and immediately expressed concern about its stability. Thus, on remand the trial court must consider whether there are triable issues of fact with respect to whether Phillips' assessment that the wall had merely "settled" was not just simple negligence, but rather gross negligence.

Accordingly, given the possibility that the negligence amounted to not ordinary negligence but gross negligence, the judgment of the trial court in favor of appellee HTSI and appellee Phillips must be vacated and this case is remanded to the trial court for further proceedings consistent with this opinion.[11] The judgment of the trial court in favor of appellee Winter and her employer is affirmed.

■ *So ordered.*[12]

---

**11.** While appellants' complaint did not specifically allege *gross* negligence on the part of appellees Phillips and HTSI, "[t]he label on the request for relief is not determinative." *Farmer v. Farmer*, 526 A.2d 1365, 1369 (D.C. 1987). The remand will constitute "no procedural unfairness" to appellees, because the trial court had noted a material dispute as to

whether they had negligently performed the home inspection. *In re Walker*, 856 A.2d 579, 586 (D.C.2004). Thus, on remand, they will have "an opportunity to make an appropriate factual and legal presentation with respect" to a claim of gross negligence. *Id.*

**12.** On remand, the trial court also will have the opportunity to address and decide wheth-

er appellant John Carleton's signature *alone* was sufficient to bind his wife *also* to the terms of the pre-inspection agreement. *See Lewis, supra,* 463 A.2d at 673. A husband who executes a contract does not *automatically* establish a principal and agent relationship with his wife with regard to that contract, but it is of course possible to establish an implied agency relationship. *Chesser v. Troiano,* 61 A.2d 629, 632 (D.C.1948).