OPINION OF THE COURT
Thomas A. Dickerson, J.
The plaintiffs went shopping for a house, found one they liked at 43 Putnam Road, Cordlandt Manor, New York and put in a bid of $156,750. Their real estate broker recommended that the house be inspected and that plaintiffs hire the defendant, Edwin M. Frank, a licensed professional engineer and owner of InspectAmerica Engineering, P. C.
Plaintiffs retained the defendant. On January 20, 1994, the defendant conducted a one-hour inspection of the premises for which he was paid $375. The next day defendant issued a 15-page report (the First Report) which contained the following statements, among others "[p]cr your request and in complete confidence, this report is issued by us as your agent for your exclusive use.”
The First Report also contained the following disclaimers and liability limitations: "(1) Defects Disclaimer: You are cautioned that even though these premises and/or equipment *339 may be in good condition upon examination, that this condition may vary thereafter and we are not responsible for not reporting latent defects or defects caused by previous misuse * * * (2) Habitability Disclaimer: This report should not be construed as a basis for evaluating the habitability of the premises, or the future merchantability of the premises, or the monetary worth of the premises, or whether the same should be purchased; (3) Warranty Disclaimer: This report provides no guaranty or warranty of the premises or equipment therein or of their suitability for use or of any recommendations made herein. We are only available to provide advice and discuss with you conditions and defects that concern you * * * This report is not an insurance policy * * * and we make no warranties, guaranties or representations, expressed or implied, in connection with the enclosed report * * * (4) Liability Limitations: * * * our liability is limited to the cost of the inspection; [and] (5) Acceptance As Assent: By accepting this report and utilizing it, the prospective owner(s) named above accept the terms, disclaimers, inspection limitations, and liability limitations of this report. These limitations of liability include and apply to all consequential damages, bodily injury and property damage of any nature. ”
The First Report also contained information about the structural condition of the premises: "[t]he concrete block foundation walls are sound * * * No water intrusion was apparent through the foundations or slab at the time of inspection; most homes are subject to water penetration under certain conditions.”
The plaintiffs read the First Report, relied upon it, and purchased their dream house at 43 Putnam Road. Shortly thereafter they discovered the truth about the basement, i.e., it was a "wet” basement subject to water intrusion. After coping with several spring floods the plaintiffs decided to take action.
First, they took a series of photographs of the basement floor and foundation walls which show discoloration marks and other telltale signs of previous water damage. During the house inspection both plaintiffs and defendant saw these telltale signs. The plaintiffs assumed that defendant knew what the discoloration marks were and would inform plaintiffs of their significance, if any.
Next, the plaintiffs obtained two books on home inspection and home construction, i.e., Principals Of Home Inspection, A *340 Guide To Residential Construction, Inspection And Maintenance written by Joseph G. McNeil, PE (Van Nostrand Reinhold Co., NY) (the McNeil Book) and The Homeowner’s Directory written by Stanley Schuler (Simon & Schuster, NY) (the Schuler Book).
On the subject of wet basements the McNeil Book states as follows: "Background Information — Wet Basements. There are a number of danger signals that could indicate that the basement * * * you are inspecting has a water problem. Check for the following carefully: damp spots on the walls; cracked walls in the basement * * * cracked floors; white salts (efflorescence) on the walls; peeling paint * * * Problems and Causes of Water. Inspect the basement * * * carefully. Most basements have a problem even if it is only a slight one. After discovering a danger signal your first step is to find the cause. ’’
Next, the plaintiffs contacted three companies and requested estimates for waterproofing their wet basement. Having educated themselves, the plaintiffs confronted the defendant. The plaintiffs’ position was simple. If the defendant had understood the significance of the telltale signs of a wet basement and found the cause then the plaintiffs could, at the very least, have negotiated a lower selling price, the differential being equivalent to the cost of waterproofing the basement. The plaintiffs demanded that defendant return the $375 inspection fee and pay the cost of waterproofing. Defendant denied having seen the telltale signs, refused to pay for the waterproofing, and agreed to return his $375 fee.
DISCUSSION
Based upon the facts the plaintiffs have set forth the following cognizable causes of action: (1) negligence, (2) negligent misrepresentation and (3) violation of General Business Law § 349 (deceptive and unfair business practices). In response the defendant has asserted that the disclaimers in the First Report absolve him of all liability or, in the alternative, limit his liability to his fee of $375.

The Law on Wet Basements

Wet basements are a common occurrence. More often than not prospective home buyers are made aware of a basement’s water intrusion problems before they purchase. Either they are told by the seller or real estate broker or they retain the services of a professional engineer.
*341 Accurate and complete information about the structural condition of a house is critical to home buyers in making an informed decision to purchase a house. Professional engineers hold themselves as professionals ready, willing and able to inspect houses and render accurate reports which they know will be relied upon. Professional engineers like other professionals (lawyers, medical doctors, accountants, insurance agents, real estate brokers and travel agents) are justifiably relied upon by consumers to render accurate advice and information in areas requiring technical expertise.
Assuming the title and status of a "professional” brings with it a higher standard of care than may otherwise be applicable to the purveyors of goods and services (see, e.g., Hardt v Brink, 192 F Supp 879, 881 [WD Wash 1961] ["This is an age of specialists and as more occupations * * * strive towards 'professional’ status the law requires an even higher standard of care in the performance of their duties”]; Butler v Scott, 417 F 2d 471 [10th Cir 1969]; Easton v Strassburger, 152 Cal App 3d 90, 199 Cal Rptr 383 [1984] [real estate broker as professional]; Roizen v Marder’s Nurseries, 161 Misc 2d 689 [1994] [professional liability for landscapers]).
Certainly, the doctrine of caveat emptor no longer applies to real estate transactions (see, e.g., Scharf v Solomon Tiegerman, 166 AD2d 697 [1990]) if, indeed, it applies to any consumer transactions (see, e.g., Moldovan, New York Creates a Private Right of Action to Combat Fraud: Caveat Venditor, 48 Brook L Rev 509 [1982]; André v Pace Univ., 161 Misc 2d 613 [1994] [educational malpractice]).

Negligent Inspection

The proper standard of care for professional engineers is set forth in the McNeil Book which identifies the "danger signals” of a wet basement ("damp spots on the walls; cracked walls * * * cracked floors; white salts * * * on the walls, peeling paint”). Many of these signs were present in plaintiff’s basement. The McNeil Book then states "[a]fter discovering a danger signal your first step is to find the cause”. The defendant did not search for and did not find the cause of the flooding.
The defendant was negligent in failing to exercise his duty of care to interpret the "danger signals” and telltale signs of a wet basement. The defendant’s negligence proximately caused the plaintiffs to buy their dream house believing its basement *342 to be dry when, in fact, it was wet and subject to water intrusion. The plaintiffs will be forced to expend considerable monies to waterproof their basement, an expense solely necessitated by defendant’s negligence.

Negligent Misrepresentation

The defendant issued the First Report which contained a false and inaccurate statement ("No water intrusion was apparent through the foundations or slab”) which plaintiffs relied upon in deciding to buy the house (Hausler v Spectra Realty, 188 AD2d 722, 724 [1992] [drainage and septic tank problems]; Pappas v Harrow Stores, 140 AD2d 501 [1988] [installation of swimming pool]; Striker v Graham Pest Control Co., 179 AD2d 984 [1992] [infestation of carpenter ants]).
The defendant held himself out as a "professional” and, in addition, expressly assumed the obligations of an agent for the plaintiffs. As such there was a special relationship between the parties. The defendant was under a duty to render accurate information in his First Report and failed to do so. Plaintiffs reasonably relied upon the inaccurate information provided. The defendant knew or should have known that the First Report was inaccurate regarding water intrusion. The defendant is liable for all appropriate damages flowing from his negligent misrepresentation.

Violation of General Business Law § 349

General Business Law § 349 prohibits deceptive and unfair business practices (see, e.g., Moldovan, op. cit.; André v Pace Univ., supra; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [1987]; Geismar v Abraham & Straus, 109 Misc 2d 495 [Suffolk Dist Ct 1981]). In this case the defendant misrepresented the water intrusion problem in plaintiffs’ basement, the plaintiffs relied upon the misrepresentations and were damaged thereby. Defendant has violated General Business Law § 349 and is liable for all appropriate damages arising therefrom (see, e.g., Young v Joyce, 351 A2d 857 [Del 1975] [Delaware consumer protection statute applied to wet basements]; Zimmerman v Northfield Real Estate, 156 Ill App 3d 154, 510 NE2d 409, appeal denied 116 Ill 2d 578, 515 NE2d 129 [1986] [Illinois consumer protection statute applied to wet basements]).

Disclaimers

To the extent defendant relies upon disclaimers to absolve himself of the consequences of his own negligence, *343 such reliance is misplaced. At the very least, these disclaimers fail to mention the term "negligence” (Alger v Abele Tractor & Equip. Co., 92 AD2d 677, 678 [1983]) nor do they state in clear and "unequivocal terms” that defendant seeks to be relieved "from his failure to use due care” (Gross v Sweet, 49 NY2d 102, 109 [1979]). Such disclaimers do "not exempt * * * [defendant] from liability for negligence upon inspecting and reporting on that which was visually perceptible” (Della Corte v Incorporated Vil. of Williston Park, 60 AD2d 639, 640 [1977]). This court has found that defendant observed the telltale signs of water intrusion, failed to note their significance, search for their cause and report all of this to plaintiffs.
In addition, the disclaimers fail to give plaintiffs an option to purchase protection for full liability (see, e.g., Sommer v Federal Signal Corp., 79 NY2d 540, 553, n 2 [1992]; Gold v Swiss Air Transp. Co., 33 AD2d 777 [2d Dept 1969]). And, lastly, the defendant’s acceptance as assent clause is unconscionable and void for a lack of notice. The First Report was given to plaintiffs after the defendant was retained, inspected the house and was paid for his services. There were no preretention negotiations, let alone agreement, as to how and in what manner defendant’s duties, obligations and responsibilities would be limited. To enforce these disclaimers would render the transaction and the relationship between plaintiffs and defendant meaningless (see, e.g., Klakis v Nationwide Leisure Corp., 73 AD2d 521, 524 [1979] [disclaimer void as striking "at the heart of the performance bargained for under the agreement”]).
Buying a house is the single most important economic decision most families will ever make. Such a decision requires accurate information about the structural problems, if any, in the house. Self-interest motivates sellers and brokers to be less than forthright in revealing structural problems to prospective buyers. It is essential that buyers be able to rely upon professional engineers to render accurate information and, if necessary, to assume full responsibility for the consequences of their negligence and malpractice.
DAMAGES
The court awards the following damages to the plaintiff.
First, damages will include the $375 fee paid to defendant for his inspection of the plaintiff’s house and the rendering of the First Report.
*344 Second, damages will include the cost of waterproofing the plaintiffs’ wet basement (see, e.g., Christian v Johnson-Rast & Hayes Co., 491 So 2d 949 [Ala 1986] [compensatory damages include diminution in value of house]). Given the lowest of the three estimates ($2,960) and the $3,000 jurisdictional limit of this court, these damages will be $2,625.