Argued and submitted April 16, affirmed May 27, 1998

Darron HOSKINS
and Gail Hoskins,
*Respondents,*

*v.*

INSPECTOR LLC,
*Petitioner,*

*and*

CONSTRUCTION CONTRACTORS BOARD,
*Respondent.*

(103856-102; CA A98521)

961 P2d 261

Ted A. Troutman argued the cause and filed the brief for petitioner.

Michael J. Martinis argued the cause and filed the brief for respondents Darron Hoskins and Gail Hoskins.

John T. Bagg, Assistant Attorney General, argued the cause for respondent Construction Contractors Board. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

**EDMONDS, J.**

Petitioner, Inspector LLC (Inspector), seeks review of an order by the Construction Contractors Board (Board), in which the Board ordered Inspector to pay $6,038 in repair costs to respondents, the Hoskinses. We review for substantial evidence and errors of law, ORS 183.482(8), and affirm.

On March 20, 1995, the Hoskinses hired Inspector to evaluate the condition of a house in Molalla that they intended to purchase. After Inspector completed the evaluation, it presented the Hoskinses with a report that contained a limitation of liability clause. The clause is labeled "IMPORTANT NOTICE" and provides:

> "This inspection report is NOT A WARRANTY of any nature as to the condition or fitness of the premises inspected. It is an OPINION of the inspector based on what was visable [sic] at the time of the inspection. The structure and the systems of the structure are to be considered in an 'as is' condition. All systems including, but not limited to, the heating, electrical, plumbing, roofing, framing, and seals are not in any way guaranteed by this report. All defects, apparent or not apparent are the sole responsibility of the sellor [sic] or of the buyer. This report is meant to only be used to obtain mortagage [sic] financing. This report is not transferrable. [Inspector] does not guarantee that the structure or systems of the structure meet current code standards. Any claim of loss or damages shall be restricted to the amount of the cost of the inspection. The acceptance of this report releases [Inspector] of all liability concerning the property inspected."

Darron Hoskins read the clause and signed his name, acknowledging that he had read it. After Darron signed the report, he paid for the evaluation and received a copy of the report from Inspector. Inspector later performed another evaluation to determine whether needed repairs that it had observed during the first inspection had been completed. It prepared another report, indicating that "all repairs are correct and complete" and gave it to the Hoskinses.

The Hoskinses moved into the house in June 1995. After moving in, they observed that Inspector had missed

some obvious problems and that some of the repair work had not been completed. They then filed a claim with the Board, claiming that Inspector's report was inaccurate and that they had suffered damages as a result of the inaccuracies. Inspector argued that the limitation of liability clause protected it from liability for any damages. After a hearing, the Board ruled:

"The performance of the reinspection by [Inspector] was not under a discrete contract but was part of the work encompassed by the parties' original contract. Therefore, the liability limitation which [Inspector] seeks to invoke applies no differently (if at all) to the reinspection and report than to the original inspection and report.

"The liability limitation was unknown to claimants when they entered into the oral contract with [Inspector], was imposed unilaterally by [Inspector] after the work was performed and was not negotiated by the parties. More importantly, the liability limitation does not apply to negligence by [Inspector], because it does not clearly and unequivocally express an intent to limit [Inspector's] liability for the consequences of its own negligence to the contract sum.

"As a result of [Inspector's] negligence and improper work, claimants have sustained damages totaling $6,038."

On review, Inspector argues that the Board erred when it concluded that the liability limitation clause did not immunize Inspector from damages. It asserts that the terms of the clause clearly and unambiguously release it from "all liability." It also contends that the Hoskinses were under no obligation to pay for the evaluation unless they agreed to the terms of the clause and that they voluntarily agreed to the liability limitation in exchange for the benefit of the evaluation.

We turn to the contractual language in the report and first examine the text of the disputed provision in the context of the document as a whole to ascertain the parties' intent. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). Inspector contends that the last two sentences of the notice govern the issue. Those sentences say: "*Any* claim of loss or damages shall be restricted to the amount of the cost of the inspection. The acceptance of this report releases

[Inspector] of *all* liability concerning the property inspected." (Emphasis supplied.) Inspector argues that, in context, those sentences immunize it from its own negligence because the italicized language includes a claim for negligence.

On the other hand, when those sentences are read in context with the rest of the paragraph, the reference to "any claim" and "all liability" could be referable to language that comes before the final two sentences. The clause first explains that the report is "not a warranty," but an "opinion" of the inspector. It then expresses that the house is considered to be in an "as is" condition and that the report does not "guarantee" the condition of the systems in the house. The clause then provides that "[a]ll defects, apparent or not apparent are the sole responsibility of the [seller] or of the buyer." Read in its entirety, the clause could mean that Inspector is not responsible for discovery of conditions that occur after the inspection rather then to immunize Inspector for its own negligence.

Because the language of the notice is susceptible to more than one reasonable meaning, the clause cannot be construed as a matter of law. As such, we examine the extrinsic evidence in an effort to resolve the ambiguity. *See Yogman,* 325 Or at 363-64. In this case, the Board received evidence regarding the extrinsic evidence of the contracting parties' intent. At the hearing, Inspector's representative testified what he had told the Hoskinses about the meaning of the clause before Darron signed for the report:

> "[T]his is an opinion, not a *warranty,* I am not an insurance agent, I do not *guarantee* the house in any way. That there may be things that I did not see, there may be *things that occur after the inspection* and I will not be any way liable for any of that—those items." (Emphasis supplied.)

Gail Hoskins also testified about her understanding of the meaning of the clause:

> "[The report] was not a warranty on the inspection he had performed at that date, that if three or four months from then a leaky pipe occurred under our sink he couldn't be responsible for a pipe breaking or what have you."

Based on that testimony, the Board could have properly found that the clause was intended by the parties to refer to conditions that occurred after the inspection was completed.

Nonetheless, it appears that the Board went to the final step in the analysis and relied on the maxim of construction that provides that a court is to construe ambiguous contracts that purport to immunize a party from the consequences of his or her own negligence to be enforceable only under limited circumstances. *See Estey v. McKenzie Engineering Inc.*, 324 Or 372, 376, 927 P2d 86 (1996) (explaining the maxim); *see also Yogman*, 325 Or at 364 (explaining the third step in the process of contract interpretation). In particular, the applicable maxim provides:

> "[A] contract will not be construed to provide immunity from the consequences of a party's own negligence unless that intention is clearly and unequivocally expressed, and * * * an ambiguous instrument * * * will be construed against the party who drafted it." *Transamerica Ins. Co. v. U.S. Nat'l Bank*, 276 Or 945, 951, 558 P2d 328 (1976).

In this case, the Board did not err under either step. Not only is there substantial evidence that the liability limitation clause was not intended to immunize Inspector from its own negligence, but the maxim that ambiguities in such clauses are to be construed against the drafter also dictates the Board's result.

Affirmed.