727 S.E.2d 823

**David F. FINCH and Shirley R. Finch, Plaintiffs Below, Petitioners**

v.

**INSPECTECH, LLC, a West Virginia Limited Liability Company, Defendant Below, Respondent.**

No. 11–0276.

Supreme Court of Appeals of West Virginia.

Submitted April 11, 2012.

Decided May 24, 2012.

George J. Cosenza, Cosenza Law Office, Parkersburg, WV, Attorney for the Petitioners.

William Crichton VI, Crichton & Crichton, Attorneys at Law, Parkersburg, WV, Attorney for the Respondent.

DAVIS, Justice:

The petitioners herein and plaintiffs below, David F. Finch and Shirley R. Finch (herein-

after "Mr. and Mrs. Finch" or "the Finches"), appeal from an order entered January 11, 2011, by the Circuit Court of Wood County. By that order, the circuit court granted summary judgment to the respondent herein and defendant below, Inspectech, LLC (hereinafter "Inspectech"). The circuit court concluded that, by signing the parties' "Inspection Agreement," which contained a clause entitled "Unconditional Release and Limitation of Liability," the Finches had released Inspectech from liability for any defects it failed to report in its inspection of the house the Finches planned to, and ultimately did, purchase. On appeal to this Court, the Finches argue that the circuit court erred by precluding them from asserting their claims against Inspectech wherein they seek damages for the costs they have incurred in repairing the defects that they allege Inspectech failed to report in its inspection of their house. Upon a review of the parties' arguments, the appendix record, and the pertinent authorities, we reverse the January 11, 2011, order of the Wood County Circuit Court and remand this case for further proceedings consistent with this opinion. Inspectech is not entitled to judgment as a matter of law based upon the terms of the parties' Inspection Agreement and the release language therein because anticipatory releases contained in home inspection contracts are void and unenforceable as contrary to the public policy of this State.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On July 7, 2009, Mr. and Mrs. Finch entered into a "Residential Real Estate Sale Contract" (hereinafter "purchase contract") to purchase a house owned by Brian and Angela Richardson (hereinafter "Dr. and Mrs. Richardson" or "the Richardsons"). While neither the Finches nor the Richardsons were represented by a real estate agent during the course of this transaction, Mrs. Finch is a licensed real estate agent. With respect to home inspections, the purchase contract provided that

[a] home inspection and report *may* be completed by a qualified inspector at the Buyer's [Finches'] expense within fifteen (15) business days from the date of acceptance of this contract. This contingency shall terminate at the above-predetermined deadline, unless the Buyer delivers to the Seller [the Richardsons] a written statement listing the specific existing deficiencies and corrections desired, together with a copy of the inspection. The Seller may, at the Seller's option, within (5) days after the delivery of the report, furnish the Buyer with a written statement that the condition shall be remedied before the date of settlement. If the Seller does not elect to make the repairs, or if the Seller makes a counter-offer, the Buyer shall have five (5) days to respond to the counter-offer or remove the contingency and take the property in its present condition or this contract shall become void with a refund of the full deposit being returned to the Buyer. The Buyer acknowledges that they have had a reasonable time to have any and all inspections conducted of the premises, and that they hereby forever waive and release the Sellers from any claim, suit or liability that may result from a defect that could have been revealed by a reasonable diligent inspection of the premises prior to purchase.[1]

(Emphasis and footnote added). The purchase contract did not expressly specify, however, that the contract was contingent upon a favorable home inspection or otherwise condition the purchase of the house upon the findings of the home inspector should one be retained.

Additionally, the purchase contract stated that,

[t]o the best of Seller's [the Richardsons'] knowledge, there are no physical problems with the property that would not be apparent upon inspection. Provided however, the Seller recommends and the buyer [sic] [the Finches] affirms that they will rely on the inspection rights of the

1. The purchase contract additionally referenced a "Wood Destroying Insect Inspection," which inspection is not at issue in the instant proceeding.

buyer [sic] and not on any representation of the Seller in making this purchase[.]

It is not apparent from the appendix record whether the Richardsons also had completed a separate, standard "Seller's Property Condition Disclosure" form regarding the subject property.

Exercising their rights under the purchase contract, the Finches hired Inspectech to perform a home inspection of the subject property. As part of the house inspection, the Finches and Inspectech, by its representative, Gary Flanagan (hereinafter "Mr. Flanagan"), entered into an Inspection Agreement. At issue in the case *sub judice* is the enforceability of the "Unconditional Release and Limitation of Liability" (hereinafter "release") clause contained within the parties' Inspection Agreement. The release provides:

> It is understood and agreed that the **COMPANY** [Inspectech] is not an insurer and that the inspection and report are not intended to be construed as a guarantee or warranty of the adequacy, performance or condition of any structure, item or system at the property address. The **CLIENT** [the Finches] hereby releases and exempts the **COMPANY** and its agents and employees of and from all liability and responsibility for the cost of repairing or replacing any unreported defect or deficiency and for any consequential damage, property damage or personal injury of any nature. In the event the **COMPANY** and/or its agents or employees are found liable due to breach of contract, breach of warranty, negligence, negligent misrepresentation, negligent hiring or any other theory of liability, then the liability of the **COMPANY** and its agents and employees shall be limited to a sum equal to the amount of the fee paid by the **CLIENT** for the inspection and report.

(Emphasis in original). Mr. Flanagan performed the subject home inspection on July 9, 2009, and reported his findings to the Finches.[2]

Thereafter, the Finches purchased the Richardsons' house on August 19, 2009, for $160,000. Within one week of closing, the Finches discovered water damage; prior repairs to correct said water damage; and water infiltration in the basement of their new home, as well as structural problems affecting the house's foundation. The Finches allege that these defects were not previously detectable because the location of a workbench owned by the Richardsons concealed the water damage, and, thus, the Finches claim that they could not fully view this portion of the house until the Richardsons had removed all of their belongings.

At the request of the Finches, Mr. Flanagan performed an additional inspection of the subject property on September 11, 2009. In his report, Mr. Flanagan observed that he had

> re-examine[d] some of the foundation cracks in the front and rear foundation walls. It does appear that some of these cracks are beginning to "re open" which does appear to indicate possible recent movement. There does appear to be evidence that some of the cracks were sealed/ filled and recently painted prior to the home inspection that was completed July 9th. Although it was mentioned in the original home inspection that there had been substantial foundation repairs/replacement completed to this residence. [sic] Predicting the rate of any past or future movement is outside the scope of a normal home inspection. Therefore, it is recommended [that] a qualified structural engineer examine all areas in question to determine if additional repairs are required or should these recent cracks be monitored.

The Finches then filed the instant lawsuit against the Richardsons and Inspectech seeking to recover, among other things, the approximately $39,000 they have expended to remedy and repair the house's water and structural issues. In their complaint, the Finches (1) alleged that the Richardsons failed to disclose and/or concealed these de-

---

2. Although the appendix record purportedly contains a copy of this inspection report, the documents designated as constituting the inspection report contain only boilerplate language and do not detail Mr. Flanagan's precise findings as to the particular house he inspected.

**152**

fects and (2) sought an award of compensatory and punitive damages. Additionally, the Finches (1) averred that Inspectech was negligent in its initial inspection of the Richardsons' house and (2) sought an award of compensatory damages.

Inspectech then filed a motion for summary judgment claiming that the release set forth in the parties' Inspection Agreement relieved it of liability for any negligence in its inspection of the subject home and its attendant inspection report.[3] By order entered January 11, 2011, the Circuit Court of Wood County granted summary judgment to Inspectech. In so ruling, the circuit court concluded that

> [a] review of the Inspection Agreement at issue in this case indicates that the UNCONDITIONAL RELEASE AND LIMITATION OF LIABILITY was conspicuously identified and absolutely unambiguous. Additionally, the Finches appear to have released Inspectech from liability for the very damages that they seek by this lawsuit, namely the cost of repairing and replacing any unreported defect or deficiency. Particularly important to the Court's finding that the Finches clearly agreed to the anticipatory release is the fact that the UNCONDITIONAL RELEASE AND LIMITATION OF LIABILITY appears on the Inspection Agreement immediately above Mrs. Finch's signature.

Therefore, the Court finds and concludes that there is no genuine issue of material fact and that Defendant Inspectech, LLC[,] is entitled to judgment as a matter of law [sic] that the Plaintiffs contractually released Defendant Inspectech, LLC[,] from all liability and responsibility for the cost of repairing and replacing any unreported defect or deficiency and for any consequential damage, property damage or personal injury of any nature and that the Plaintiffs' claims in this case are dismissed as to Defendant Inspectech, LLC.

3. It is unclear from the appendix record in this case whether the Finches' claims against the Richardsons have been resolved or if they remain pending. In any event, the instant appeal does

From this adverse ruling, the Finches appeal to this Court.

## II.

### STANDARD OF REVIEW

Before this Court, the Finches challenge the circuit court's grant of summary judgment to Inspectech based upon that tribunal's interpretation of the parties' Inspection Agreement in accordance with existing law. Given the nature of the instant controversy, we must consider the issues raised by the parties in light of multiple, interrelated standards of review.

We first are called upon to decide whether disposition of the Finches' claims against Inspectech by way of summary judgment was appropriate. Our review of a lower court's order granting a party's motion for summary judgment is plenary: "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). In conducting our *de novo* review, we consider whether the facts and the law entitle the moving party to an award of summary judgment.

Rule 56(c) of the West Virginia Rules of Civil Procedure requires a court to award summary judgment "*if* the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and* that *the moving party is entitled to a judgment as a matter of law.*" (Emphasis added). Stated otherwise,

> [a] motion for summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who made the motion is entitled to a judgment as a matter of law.

not involve the Finches' claims against the Richardsons, and the Richardsons are not parties to the instant appeal.

Syl. pt. 5, *Wilkinson v. Searls,* 155 W.Va. 475, 184 S.E.2d 735 (1971). Thus, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter,* 192 W.Va. 189, 451 S.E.2d 755. Accordingly, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

■ Next we must consider the overarching framework within which the instant controversy has presented itself: the parties' Inspection Agreement contract. In determining that Inspectech was entitled to summary judgment, the circuit court concluded that the subject contractual terms were valid and enforceable. We previously have held that " '[i]t is the province of the Court ... to interpret a written contract.' Syl. Pt. 1[, in part], *Stephens v. Bartlett,* 118 W.Va. 421, 191 S.E. 550 (1937)." Syl. pt. 1, in part, *Orteza v. Monongalia Cnty. Gen. Hosp.,* 173 W.Va. 461, 318 S.E.2d 40 (1984). Therefore, "we apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract." *Zimmerer v. Romano,* 223 W.Va. 769, 777, 679 S.E.2d 601, 609 (2009) (per curiam) (citation omitted).

■ Finally, we must determine the pivotal question of law presented by the case *sub judice:* whether the subject contractual provision at issue, which purports to release Inspectech from claims resulting from its allegedly negligent performance of a house inspection, is valid and enforceable. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). *Accord* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

In accordance with these standards, we now consider the parties' arguments.

## III.

## DISCUSSION

The instant appeal presents a single question for our consideration and resolution: is an anticipatory release in a home inspection contract that releases the home inspector from claims related to defects that are not reported in the home inspection report valid and enforceable? We answer this question in the negative: an anticipatory release in a home inspection contract is invalid and unenforceable because such a contractual provision is violative of and contrary to the public policy of this State.

At issue in this proceeding is the anticipatory release contained in the parties' Inspection Agreement contract. This clause provides:

### UNCONDITIONAL RELEASE AND LIMITATION OF LIABILITY

It is understood and agreed that the **COMPANY** [Inspectech] is not an insurer and that the inspection and report are not intended to be construed as a guarantee or warranty of the adequacy, performance or condition of any structure, item or system at the property address. The **CLIENT** [the Finches] hereby releases and exempts the **COMPANY** and its agents and employees of and from all liability· and responsibility for the cost of repairing or replacing any unreported defect or deficiency and for any consequential damage, property damage or personal injury of any nature. In the event the **COMPANY** and/or its agents or employees are found liable due to breach of contract, breach of warranty, negligence, negligent misrepresentation, negligent hiring or any other theory of liability, then the liability of the **COMPANY** and its agents and employees shall be limited to a sum equal to the amount of the fee paid by the **CLIENT** for the inspection and report.

(Emphasis in original). Based upon this contractual language, the circuit court awarded

summary judgment to Inspectech concluding that this release prohibited the Finches from asserting their claims against Inspectech for damages they claim were occasioned by Inspectech's failure to identify and disclose various defects in their new home. Enforcing this limitation of liability provision, the circuit court concluded that the clause was unambiguous and conspicuously placed in the contract and that the Finches had specifically agreed to its terms and its inclusion in the parties' Inspection Agreement contract.

Before this Court, the Finches argue that the subject anticipatory release provision is invalid and unenforceable as contrary to public policy because it insulates Inspectech by relieving it of liability for any and all damages they have suffered as a result of Inspectech's allegedly negligent performance of its inspection of the subject house and its preparation of the resultant inspection report. In this regard, the Finches contend that Mr. Flanagan, who performed the home inspection and prepared the home inspection report for Inspectech, held himself out as having been certified as a home inspector by the State of West Virginia. Nevertheless, the Finches assert that they have no recourse against either Mr. Flanagan or Inspectech for failure to abide by such certification standards because the subject release precludes them from asserting any claims for damages resulting from said home inspection. Thus, the Finches argue, the anticipatory release in the parties' Inspection Agreement thwarts the protections afforded to home buyers by the State's certification standards, and, as such, the release violates public policy because it provides a disincentive for experts to fully and adequately perform the services they are hired and paid to perform. Citing Kyriazis v. University of West Virginia, 192 W.Va. 60, 450 S.E.2d 649 (1994); Murphy v. North American River Runners, Inc., 186 W.Va. 310, 412 S.E.2d 504 (1991).

By contrast, Inspectech disagrees with the Finches' characterization of the anticipatory release as contrary to public policy and argues, instead, that this provision does not violate public policy because it did not provide or perform a public service in inspecting the Finches' prospective home. As an independent home inspection company, Inspec-

tech contends that it is not a public service entity as contemplated by the Kyriazis opinion, which determined public service status based upon the nature of the entity providing the service, not upon the nature of the service provided. See Syl. pt. 3, Kyriazis, 192 W.Va. 60, 450 S.E.2d 649. Rather, Inspectech asserts that it is a private enterprise, and, as such, it may freely contract to relieve itself of future liability. Finally, Inspectech states that it does not provide an essential service or a service that is a matter of practical necessity. Citing Baker v. Roy H. Haas Assocs., Inc., 97 Md.App. 371, 629 A.2d 1317 (1993) (enforcing limitation of liability clause to limit home inspector's liability for ordinary negligence in performing home inspection); Morse v. Bullseye Mktg., Inc., 123 Wash.App. 1037 (2004) (unpublished op.) (concluding that exculpatory clause in home inspection contract is not contrary to public policy and thus is enforceable because residential home inspectors do not provide essential public service). This lack of essentialness and necessity is particularly true under the facts of the instant appeal insofar as a home inspection was not essential to the Finches' purchase of the subject home because the purchase was not contingent upon the performance of a home inspection nor was a home inspection required by the contracting parties, a real estate agent, or a financial institution.

The case sub judice presents a matter of first impression as to whether an anticipatory release or limitation of liability clause in a home inspection contract is valid, although this Court twice has found such clauses to be unenforceable in other contexts. In the first such case, Murphy v. North American River Runners, Inc., 186 W.Va. 310, 412 S.E.2d 504 (1991), an anticipatory release purported to relieve a whitewater rafting company of liability for injuries its customers might sustain in the pursuit of the whitewater rafting activities the company provided. After a customer who had signed the release was injured when the guide of her raft attempted to rescue another raft during their expedition, she sued the whitewater rafting company. The circuit court granted summary judgment to the rafting company based upon the lan-

guage of the subject release. This Court then reversed that ruling concluding that the limitation of liability provision was unenforceable because it attempted to relieve the whitewater rafting company of its duty to act in accordance with the statutory standard of conduct that the Legislature had prescribed to regulate the whitewater rafting industry and to protect the consumers thereof.

■ In reaching this result, the Court found that the West Virginia Whitewater Responsibility Act, W. Va.Code § 20–3B–1 *et seq.,*

> imposes in general terms certain statutory duties upon commercial whitewater outfitters ...; recognizes liability for violation of these statutory duties; and immunizes commercial whitewater outfitters ... from tort liability to participants in whitewater rafting expeditions for harm resulting from the inherent risks of this recreational activity which are essentially impossible to eliminate regardless of all feasible safety measures.

*Murphy,* 186 W.Va. at 317, 412 S.E.2d at 511 (citation and footnote omitted). Recognizing that the Legislature had imposed upon the whitewater rafting industry a standard of care with which it is expected to comply in order to protect its participants, we concluded that the whitewater rafting company could not relieve itself of liability for failure to act in accordance with its statutorily mandated responsibilities. In reaching this decision, we held, in Syllabus point 1, that, "[w]hen a statute imposes a standard of conduct, a clause in an agreement purporting to exempt a party from tort liability to a member of the protected class for the failure to conform to that statutory standard is unenforceable." *Murphy,* 186 W.Va. 310, 412 S.E.2d 504.

■ The Court next considered the validity of anticipatory releases in *Kyriazis v. University of West Virginia,* 192 W.Va. 60, 450 S.E.2d 649 (1994), wherein a university student was injured while playing in a rugby match as a member of the university-sanctioned Rugby Club. Unlike the opinion rendered in *Murphy,* the *Kyriazis* opinion turned upon whether West Virginia University (hereinafter "WVU") had provided a public service in sanctioning the university's Rugby Club. In deciding that, by authorizing the Rugby Club as an official student organization WVU had provided a public service to its students, we recognized the general rule that contracting parties may freely enter into contracts limiting the parties' liability to one another *unless* such contractual terms conflict with public policy considerations:

> Generally, in the absence of an applicable safety statute, a plaintiff who *expressly* and, under the circumstances, *clearly* agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct may not recover for such harm, unless the agreement is invalid as contrary to public policy. When an express agreement is freely and fairly made, between parties who are in an equal bargaining position, and there is no public interest with which the agreement interferes, it generally will be upheld.

Syl. pt. 1, *Kyriazis,* 192 W.Va. 60, 450 S.E.2d 649 (emphasis in original). We then explained under what circumstances a limitation of liability or anticipatory release provision would violate public policy and, thus, be rendered unenforceable:

> A clause in an agreement exempting a party from tort liability is unenforceable on grounds of public policy if, for example, (1) the clause exempts a party charged with a duty of public service from tort liability to a party to whom that duty is owed, or (2) the injured party is similarly a member of a class that is protected against the class to which the party inflicting the harm belongs.

Syl. pt. 2, *Kyriazis,* 192 W.Va. 60, 450 S.E.2d 649. Finally, with respect to the "public service" test enunciated in Syllabus point 2, we further held that, "[i]n the context of tort liability, when considering whether an enterprise qualifies as a public service, the Court must examine the nature of the enterprise itself." Syl. pt. 3, *id.*[4]

---

4. The *Kyriazis* opinion further reiterated and considered the six factors recognized by the California Supreme Court as indicative characteristics of a "public service" in *Tunkl v. Regents of University of California,* 60 Cal.2d 92, 97–100, 32 Cal.Rptr. 33, 36–38, 383 P.2d 441, 444–46 (1963)

In consideration of these holdings in the *Kyriazis* case, we concluded that the anticipatory release at issue therein was void as a matter of public policy because of WVU's provision of a public service. In this regard, we recognized that "athletics are integral and important elements of the education mission at West Virginia University," *Kyriazis*, 192 W.Va. at 66, 450 S.E.2d at 655, and that,

[w]hen a state university provides recreational activities to its students, it fulfills its educational mission, and performs a public service. As an enterprise charged with a duty of public service here, the University [WVU] owes a duty of due care to its students when it encourages them to participate in any sport.

*Id.* Lastly, we concluded that, because WVU had employed an attorney to prepare the subject release and had required students to sign the release as a prerequisite to their participation in the Rugby Club, WVU possessed a "decisive advantage in bargaining strength over the [student] at the time he signed the Release," which rendered the contract one of adhesion and, thus, unenforceable. *Id.*

The facts of the case *sub judice* also involve a contract that includes an anticipatory release provision that seeks to limit the liability of the party drafting the contract. Here, the Finches contracted with Inspectech for an inspection of the house they were planning to purchase, and the Inspection Agreement included a provision whereby Inspectech sought to limit its liability with respect to its performance of the subject home inspection and its preparation of the resultant home inspection report. Whether this limitation of liability provision is enforceable, however, depends upon whether the inclusion of this exculpatory provision is consistent with or contrary to the public policy of this State. *See generally Kyriazis v. University of West Virginia*, 192 W.Va. 60, 450 S.E.2d 649; *Murphy v. North American River Runners, Inc.*, 186 W.Va. 310, 412 S.E.2d 504.

■■■■■■ As our prior opinion in *Murphy* determined, a limitation of liability contractual provision may be invalidated as contrary to public policy if it absolves a party of liability for failure to conform to a statutorily imposed standard of conduct. *See* Syl. pt. 1, *Murphy*, 186 W.Va. 310, 412 S.E.2d 504. Moreover, an anticipatory release is not enforceable if it exempts a tortfeasor from liability to a person who is a member of a protected class, which protection is designed to insulate the protected class members from the tortfeasor's misconduct. *See* Syl. pt. 2, *Kyriazis*, 192 W.Va. 60, 450 S.E.2d 649 (1994). In the State of West Virginia, home inspectors are governed by and are required to comply with guidelines regulating the home inspection industry for the protection of the consumers of such services. *See generally* W. Va.C.S.R. § 87–5–1 *et seq.*[5] Specifically,

---

(en banc). *Kyriazis*, 192 W.Va. at 65, 450 S.E.2d at 654. However, because we conclude that the release entered into between Inspectech and the Finches in the instant proceeding is contrary to public policy due to the imposition of a legislative standard of conduct upon providers of home inspection services, *see* Syl. pt. 1, *Murphy*, 186 W.Va. 310, 412 S.E.2d 504, and the Finches' status as consumers of such services who are within the class of those sought to be protected by such standards, *see* Syl. pt. 2, *Kyriazis*, 192 W.Va. 60, 450 S.E.2d 649, we need not reach the alternative public policy theory of invalidating limitation of liability clauses based upon the provision of a public service. *See* Section III., *infra.*

5. Although our holding in Syllabus point 1 of *Murphy*, 186 W.Va. 310, 412 S.E.2d 504, contemplated a *statute* that imposes a standard of conduct as a bar to the enforcement of an exculpatory provision, the standard of conduct applicable to the parties in the case *sub judice* is provided, instead, by *legislative rule*. The home inspector regulations set forth in W. Va.C.S.R. § 87–5–1 *et seq.* that govern the conduct of Mr. Flanagan and Inspectech were promulgated pursuant to the specific authority and direction of the Legislature to do so. *See* W. Va.Code § 29–3–5b(d) (2009) (Supp.2011). Moreover, the provisions of this legislative rule, W. Va.C.S.R. § 87–5–1 *et seq.*, comport with the express legislative intent to adopt rules to establish state standards "for the licensing, registration, certification, [and] regulation of ... home inspectors," W. Va.Code § 29–3–5b(d). Therefore, we conclude that, for purposes of our public policy analysis in this case, a regulatory standard of conduct, which has been promulgated as a legislative rule in accordance with a specific legislative delegation of authority and direction to do so, fulfills the same goal of establishing a standard of conduct to protect a specified class of persons as does a statutory standard of conduct, which has been enacted as a statute in accordance with the legislative process for the enactment of statutes. *See* Syl. pt. 4, *State ex rel. Callaghan v. West Virginia Civil Serv.*

[t]his rule establishes the procedures to be followed to assure that consumers of home inspection services can rely on the competence of home inspectors, as determined by educational and experience requirements and testing. In order to protect consumers, this rule defines home inspection, outlines what must be included in a home inspection, defines unethical conduct by home inspectors and creates penalties for prohibited acts.

W. Va.C.S.R. § 87–5–1.1 (2006). Subsequent provisions of the rule require home inspectors to be certified and define the requirements for certification, W. Va.C.S.R. §§ 87–5–2 to 87–5–10; adopt general standards of practice for the home inspection industry, W. Va.C.S.R. § 87–5–11.1; specify what components of a house must be inspected and reported upon, W. Va.C.S.R. §§ 87–5–14 to 87–5–23; impose responsibilities upon home inspectors, W. Va. C.S.R. § 87–5–24; and provide procedures for the disposition of consumers' complaints about home inspectors and their provision of home inspection services, W. Va.C.S.R. §§ 87–5–26 to 87–5–27.

From the plain language of these home inspector regulations, it is clear that there exists in this State an established standard of conduct with which home inspectors are expected to comply in performing home inspections and in preparing reports for their clients. This standard of conduct renders unenforceable exculpatory clauses in home inspection contracts that purport to exempt home inspectors for their failure to comply with such conduct standards. *See* Syl. pt. 1, *Murphy*, 186 W.Va. 310, 412 S.E.2d 504. Also apparent from the numerous regulatory requirements with which home inspectors are expected to comply and the extensive protections afforded to consumers of home inspection services is that the legislative rule establishing a standard of conduct for home inspectors is intended to insulate such consumers from home inspectors' tortious misconduct consistent with the protected class public policy prohibition of exculpatory clauses in Syllabus point 2 of *Kyriazis*, 192 W.Va. 60, 450 S.E.2d 649. Therefore, we hold that W. Va.C.S.R. § 87–5–1 *et seq.* imposes upon providers of home inspection services a standard of conduct with which home inspectors are required to comply in the performance of home inspections and the preparation of reports based upon such inspections. Accordingly, a provider of home inspection services may not seek to relieve itself of liability for failure to comply with such regulations, and, thus, the inclusion of a limitation of liability provision, anticipatory release, or exculpatory clause in a contract for home inspection services which does so is invalid and unenforceable as contrary to the public policy of this State.[6]

---

Comm'n, 166 W.Va. 117, 273 S.E.2d 72 (1980) ("Procedures and rules properly promulgated by an administrative agency with authority to enforce a law will be upheld so long as they are reasonable and do not enlarge, amend or repeal substantive rights created by statute.").

**6.** This holding is consistent with the position adopted by the majority of jurisdictions that have considered the validity of limitation of liability provisions in home inspection contracts and have concluded that such exculpatory clauses are invalid and unenforceable as contrary to public policy. *See, e.g., Carleton v. Winter,* 901 A.2d 174 (D.C.2006) (remanding case for determination of whether home inspector's failure to report structural defects constituted gross negligence so as to render unenforceable exculpatory clause in home inspection contract); *Amerispec Franchise v. Cross,* 215 Ga.App. 669, 452 S.E.2d 188 (1994) (affirming lower tribunal's decision finding exculpatory clause in home inspection contract to be unenforceable due to statute prohibiting inclusion of such clauses in building and construction contracts); *Mullins v. Northern Kentucky In-*

spections, Inc., No.2009–CA–000067–MR, 2010 WL 3447630, at *1 (Ky.Ct.App. Sept. 3, 2010) (holding "contract clause limiting the damages recoverable from a home inspector for negligent inspection … is void as against public policy"); *Cameron v. Bruce,* 981 So.2d 204 (La.Ct.App. 2008) (remanding case to consider whether home inspector's failure to report structural problems constituted gross negligence that would invalidate limitation of liability clause in home inspection contract); *Pitts v. Watkins,* 905 So.2d 553 (Miss.2005) (en banc) (holding limits of liability clause in home inspection contract to be unenforceable as substantively unconscionable because it deprives injured home buyers of adequate remedy); *Lucier v. Williams,* 366 N.J.Super. 485, 841 A.2d 907 (2004) (declaring limitation of liability provision in home inspection contract to be unconscionable and violative of public policy); *Edwards v. Taylor,* 182 N.C.App. 722, 727, 643 S.E.2d 51, 54 (2007) (affirming lower court's ruling declaring limitation of liability provision to be "unenforceable and against public policy" (internal quotations and citation omitted)); *Bozich v. Kozusko,* No.

09CA009604, 2009 WL 5150264 (Ohio Ct.App. Dec. 30, 2009) (upholding trial court's decision finding limitation of liability clause to be unconscionable and, thus, unenforceable); *O'Donoghue v. Smythe, Cramer Co.*, No. 80453, 2002 WL 1454074 (Ohio Ct.App. July 3, 2002) (same); *Carey v. Merritt*, 148 S.W.3d 912, 918 (Tenn.Ct.App.2004) (applying *Tunkl* factors to conclude that exculpatory clause in home inspection contract is "contrary to public policy and void"); *Russell v. Bray*, 116 S.W.3d 1 (Tenn.Ct.App.2003) (same); *Glassford v. BrickKicker*, 2011 VT 118, 35 A.3d 1044 (2011) (declaring limited liability clause in home inspection contract to be unconscionable and unenforceable). *See also Redding v. Tanner*, 231 Ga.App. 250, 498 S.E.2d 156 (1998) (refusing to enforce limitation of liability clause in home inspection contract because release was prepared and presented to home buyers after oral agreement for inspection services had been reached and inspection had been performed, and buyers never signed document purporting to limit home inspector's liability); *Schaffer v. Property Evaluations, Inc.*, 854 S.W.2d 493 (Mo.Ct.App.1993) (declining to enforce limitation of liability provision in home inspection contract where no separate consideration was provided for exculpatory clause), *abrogated by Purcell Tire & Rubber Co., Inc. v. Executive Beechcraft, Inc.*, 59 S.W.3d 505 (Mo.2001); *Rubin v. AMC Home Inspection & Warranty Serv.*, 175 N.J.Super. 315, 418 A.2d 306 (1980) (concluding that exculpatory clause in home inspection contract did not operate to limit home inspector's liability for negligence in performance of home inspection because record did not evince clear intent of both parties to limit home inspector's liability); *Estey v. MacKenzie Eng'g Inc.*, 324 Or. 372, 927 P.2d 86 (1996) (ruling that limitation of liability provision in home inspection contract did not operate to limit home inspector's liability or bar home buyer's negligence claim where clause did not unequivocally express home purchaser's intent to limit home inspector's liability); *Hoskins v. Inspector LLC*, 154 Or.App. 136, 961 P.2d 261 (1998) (finding limitation of liability provision to be unenforceable because provision was ambiguous, parties' intent as to scope of limitation was not clear, and, thus, provision was construed against drafter thereof). *But see, e.g., Zerjal v. Daech & Bauer Constr., Inc.*, 405 Ill.App.3d 907, 345 Ill.Dec. 887, 939 N.E.2d 1067 (2010) (enforcing limit-of-liability provision in home inspection contract where no settled public policy or fiduciary relationship between the parties invalidated release; rejecting notion that Illinois Home Inspector License Act established public policy disfavoring exculpatory clauses in home inspection contracts); *Moler v. Melzer*, 24 Kan.App.2d 76, 942 P.2d 643 (1997) (finding limitation of liability clause in home inspection contract to be enforceable as clear expression of parties' intent to limit home inspector's liability); *Baker v. Roy H. Haas Assocs., Inc.*, 97 Md.App. 371, 629 A.2d 1317 (1993) (enforcing limitation of liability clause to limit home inspector's liability for ordinary negligence in performing home inspection because contract-

ing parties may freely limit their liability and parties did not have unfair bargaining power; further concluding that such release was not contrary to public policy); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731 (Tex.Ct.App.2005) (holding that limitation of liability clause in home inspection contract was not unconscionable); *Morse v. Bullseye Mktg., Inc.*, 123 Wash. App. 1037 (2004) (unpublished op.) (applying *Tunkl* factors to conclude that exculpatory clause in home inspection contract is not contrary to public policy and thus is enforceable; expressly noting that State of Washington does not specifically regulate home inspectors).

However, one jurisdiction, New York, has issued decisions both enforcing and refusing to enforce limitation of liability clauses in home inspection contracts. *See, e.g., Smith–Hoy v. AMC Prop. Evaluations, Inc.*, 52 A.D.3d 809, 811, 862 N.Y.S.2d 513, 516 (2008) (upholding limitation of liability clause because no special relationship between the parties, statute, or public policy imposed liability, but recognizing that "party may not limit its liability for damages caused by its own grossly negligent conduct" (internal citations omitted)); *Mancuso v. Rubin*, 861 N.Y.S.2d 79, 52 A.D.3d 580 (2008) (same); *Schietinger v. Tauscher Cronacher Prof'l Eng'rs, P.C.*, 838 N.Y.S.2d 95, 40 A.D.3d 954 (2007) (per curiam) (same); *Rector v. Calamus Grp., Inc.*, 794 N.Y.S.2d 470, 17 A.D.3d 960 (2005) (same and also enforcing release against non-signatory wife as third-party beneficiary of home inspection contract); *Peluso v. Tauscher Cronacher Prof'l Eng'rs, P.C.*, 704 N.Y.S.2d 289, 270 A.D.2d 325 (2000) (mem. dec.) (same); *Kogan v. Fenster*, 744 N.Y.S.2d 628, 191 Misc.2d 525 (N.Y.Sup.App. Term 2002) (mem. dec.) (same). *See also Clement v. Delaney Realty Corp.*, 845 N.Y.S.2d 423, 45 A.D.3d 519 (2007) (upholding limitation of liability clause because home inspector's conduct did not rise to level of gross negligence). *But see, e.g., McPherson v. Husbands*, 864 N.Y.S.2d 444, 54 A.D.3d 735 (2008) (denying summary judgment to home inspector because record did not demonstrate that home purchasers had signed or assented to home inspection contract containing limitation of liability provision); *Ricciardi v. Frank*, 620 N.Y.S.2d 918, 163 Misc.2d 337 (N.Y.City Ct.1994) (refusing to enforce limitation of liability clause in home inspection contract because contract established special relationship between home inspector and home purchasers, clause was not clear and conspicuous, and release was unconscionable), *aff'd as modified*, 655 N.Y.S.2d 242, 170 Misc.2d 777 (N.Y.Sup.Ct.App. Term 1996) (mem. dec.) (enforcing exculpatory clause to limit home inspector's liability to cost of home inspection).

Furthermore, consistent with the majority position declaring exculpatory clauses in home inspection contracts to be unenforceable as contrary to public policy, several jurisdictions also have adopted statutes that specifically prohibit the inclusion of an anticipatory release or limitation of liability provision in a contract for home

■ Applying these regulations and our holding to the facts of the case *sub judice*, we conclude that the "Unconditional Release and Limitation of Liability" set forth in the parties' Inspection Agreement is invalid and unenforceable because it is contrary to the public policy of this State. It cannot be disputed that Mr. Flanagan, as a home inspector, and Inspectech, as a provider of home inspection services, are subject to the legislative regulations of W. Va.C.S.R. § 87–5–1 *et seq.* and may not relieve themselves of liability for their failure to conduct their home inspection services in accordance with such standards. *See* Syl. pt. 1, *Murphy v. North Am. River Runners, Inc.,* 186 W.Va. 310, 412 S.E.2d 504. Likewise, Mr. and Mrs. Finch, as consumers of home inspection services, are entitled to receive the protections afforded by such regulations and should not be expected to relinquish such safeguards as a condition to their receipt of home inspection services. *See* Syl. pt. 2, *Kyriazis v. University of West Virginia,* 192 W.Va. 60, 450 S.E.2d 649.

■ Moreover, the specific terms of the "Unconditional Release and Limitation of Liability" clause of the parties' Inspection Agreement expressly attempt to relieve Inspectech of liability attributable to its inspec-tion of the house the Finches requested it to inspect, and, to the extent said release does not completely absolve Inspectech of such liability, such terms further endeavor to limit the extent of Inspectech's liability, both of which provisions directly contravene the home inspector standard of conduct established by W. Va.C.S.R. § 87–5–1 *et seq.* The governing standard of home inspector conduct describes, in great detail, the components of a dwelling that a home inspector is required to inspect and upon which he/she is expected to report his/her findings. *See* W. Va.C.S.R. §§ 87–5–14 to 87–5–23. To the extent that the subject release attempted to relieve Mr. Flanagan and Inspectech of liability for failing to perform the subject home inspection and prepare the corresponding report in accordance with such standard of conduct, said release is invalid and unenforceable as contrary to public policy. *See* Syl. pt. 1, *Murphy,* 186 W.Va. 310, 412 S.E.2d 504. Furthermore, the standard of home inspector conduct requires home inspectors to maintain liability insurance of at least $250,000. *See* W. Va.C.S.R. § 87–5–4.3. Insofar as the "Unconditional Release and Limitation of Liability" provision purported to limit the amount of Mr. Flanagan's and

---

inspection services. *See, e.g.,* Alaska Stat. Ann. § 08.18.085(d) (West 2003) ("Contractual provisions that purport to limit the liability of a home inspector to the cost of the home inspection report are contrary to public policy and void."); Cal. Bus. & Prof.Code § 7198 (West 1996) ("Contractual provisions that purport to waive the duty owed pursuant to Section 7196, or limit the liability of the home inspector to the cost of the home inspection report, are contrary to public policy and invalid."); Mass. Gen. Laws Ann. ch. 112, § 225(6)(v) (West 2000) (allowing for denial, refused renewal, limitation, suspension, or revocation of home inspector's license upon violation of ethical standards, including "attempting to limit liability for negligent or wrongful errors or omissions by use of a clause within a performance contract that limits the cost of damages for negligent or wrongful errors or omissions"); Wis. Stat. Ann. § 440.976 (West 1997) ("No home inspector may include, as a term or condition in an agreement to conduct a home inspection, any provision that disclaims the liability, or limits the amount of damages for liability, of the home inspector for his or her failure to comply with the standards of practice prescribed in this subchapter or in rules promulgated under this subchapter."). By contrast, other jurisdictions permit the inclusion of exculpato-ry provisions in home inspection contracts, but strictly limit the extent to which the home inspector may relieve himself/herself of liability. *See, e.g.,* Kan. Stat. Ann. § 58–4505 (West 2011) (providing for suspension or revocation of home inspector's registration or imposition of probationary conditions if home inspector "includ[es] as a term or condition in an agreement to conduct a home inspection any provision that disclaims the liability of the registered home inspector for any errors and omissions which may arise during a home inspection or to limit the amount of damage for liability for any errors and omissions which may arise during a home inspection to less than $10,000 in the aggregate for each home inspection"); 68 Pa. Stat. Ann. § 7507(a)(1) (West 2000) ("The following types of provisions in a contract with a home inspector for the performance of a home inspection are contrary to public policy and shall be void: ... a limitation on the liability of the home inspector for gross negligence or willful misconduct."). *But see, e.g.,* Md.Code Ann., Bus. Occ. & Prof. § 16–4A–01(c) (West 2008) (requiring only that "[a]ny limitation of the liability of the licensee for any damages resulting from the report on the home inspection shall be agreed to in writing by the parties to the home inspection prior to the performance of the home inspection").

Inspectech's liability to the amount the Finches had paid for the home inspection and corresponding report, which figure is substantially less than the mandated limits of liability coverage, such release does not adequately protect the Finches as members of the class intended to be protected from home inspectors' unscrupulous conduct. *See* Syl. pt. 2, *Kyriazis,* 192 W.Va. 60, 450 S.E.2d 649. Therefore, the subject release is invalid as violative of public policy for this reason, as well.

■ In its order granting summary judgment, the circuit court concluded that "Defendant Inspectech, LLC[,] is entitled to judgment as a matter of law" because the Finches had "contractually released Defendant Inspectech, LLC[,] from all liability and responsibility for the cost of repairing and replacing any unreported defect or deficiency and for any consequential damage, property damage or personal injury of any nature." Because we find the subject release to be invalid and unenforceable as contrary to the public policy of this State, Inspectech is not entitled to judgment as a matter of law because this release does not operate to bar the Finches' claims against Inspectech. Absent a party's entitlement to judgment as a matter of law, summary judgment is improper. *See* Syl. pt. 5, *Wilkinson v. Searls,* 155 W.Va. 475, 184 S.E.2d 735. Accordingly, we reverse the circuit court's order granting summary judgment to Inspectech based upon the parties' "Unconditional Release and Limitation of Liability" and remand this case to the circuit court for further proceedings consistent with this opinion.

## IV.

### CONCLUSION

For the foregoing reasons, the January 11, 2011, order of the Circuit Court of Wood County is hereby reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.